UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **CLARENCE WALTER CRAWFORD, JR.** | § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. SA-5:21-cv-7 |
| **CITY OF NEW BRAUNFELS, TEXAS, KALEB MEYER, AND TOM WIBERT, FORMER NEW BRAUNFELS, TEXAS CHIEF OF POLICE** | § § § § § | |
| Defendants | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, Clarence Walter Crawford, Jr., a black male, complaining of City of New Braunfels, Texas, Kaleb Meyer, a white male and former New Braunfels, Texas Police Officer, and Tom Wibert, a white male and former New Braunfels, Texas Chief of Police, referred to collectively as Defendants, and for cause of action would show the Court the following:

**I. PARTIES**

1. Plaintiff, **Clarence Walter Crawford, Jr.** (hereinafter referred to as "Plaintiff" or "Crawford"), is an individual residing in New Braunfels, Comal County, Texas and was a resident of New Braunfels at the time of the incidents made the basis of this suit.

2. Defendant, **City of New Braunfels, Texas** (hereinafter referred to as "New Braunfels"), is, and at all relevant times was, a municipality incorporated under the laws of the State of Texas and may be served with process by serving the New Braunfels City Manager, Robert Camareno, at his place of business, 550 Landa Street, New Braunfels, Texas 78130.

3.	Defendant **Kaleb Meyer** (hereinafter referred to as "Meyer") is an individual and former New Braunfels Police Department officer. Meyer resides in Comal County, Texas and may be served with process by serving New Braunfels City Manager, Robert Camareno, at his place of business, 550 Landa Street, New Braunfels, Texas 78130.

4.	Defendant **Tom Wibert** (hereinafter referred to as "Wibert"), former Chief of Police for the City of New Braunfels, Texas, is an individual residing in Comal County, Texas and may be served with process by serving New Braunfels City Manager, Robert Camareno, at his place of business, 550 Landa Street, New Braunfels, Texas 78130.

## II. JURISDICTION AND VENUE

5.	Plaintiff Crawford was subjected to excessive force, wrongful arrest, and illegal search and seizure in violation of his rights guaranteed to him by the Fourth Amendment of the United States Constitution, and applied to States pursuant to the Fourteenth Amendment of the United States Constitution.

6.	42 U.S.C. §1983 and 42 U.S.C. §1988 provide jurisdiction over Plaintiff's constitutional claims for redress, which are conferred on this Court by 28 U.S.C. §1343(a)(3).

7.	Federal question jurisdiction is conferred on this Court by 28 U.S.C. §1331, because this action arises under the Constitution and laws of the United States.

8.	Venue is proper in the Western District of Texas, San Antonio Division, as this is the district where the claim arose in accordance with 28 U.S.C. § 1391(b).

## III. FACTS

9. In the early evening hours of January 15, 2020, Defendant Meyer, acting in his official capacity as an officer of the New Braunfels Police Department ("NBPD"), targeted and pursued Plaintiff Crawford in New Braunfels, Texas. Defendant Meyer's initial contact with Plaintiff Crawford occurred when Meyer pulled up beside Crawford at a traffic light where Meyer directly observed Mr. Crawford from his police cruiser. Crawford's vehicle did not have tinted windows. At this point: (1) Crawford's gender and race were readily apparent to Meyer; and (2) Meyer observed Crawford's vehicle, including his license plate, and took no action consistent with a belief that Crawford had committed a traffic violation.

10. Meyer then followed Mr. Crawford for a period (Meyer later stated this period as "three or four minutes") in the northbound lanes of Interstate-35 *before* turning on his lights and siren near Exit 187. After Meyer initiated his lights and siren in pursuit of Crawford, he radioed dispatch, saying, "It's going to be a dirty license plate." Strikingly, Meyer then proceeds to correctly read and recite Crawford's license plate number over the radio to dispatch: "George. Edward. Robert. Zero. Sam. Adam." Meyer then repeated the license plate number over the radio to dispatch, exactly as he read it the first time. Meyer's later claims that he was unable to read Crawford's "dirty" license plate are clearly and unequivocally false, evidenced by the fact that Meyer correctly called the plate number into dispatch around dusk while following Mr. Crawford at approximately 60 mph (Meyer relayed Mr. Crawford's speed to dispatch while in pursuit, which can be heard in Meyer's body-cam footage). Meyer later told his supervisor that the alleged dirty license plate provided his "PC" (probable cause) to stop Crawford, explaining that he "guessed" the license plate number.

11. Mr. Crawford, having noticed Meyer's prior observation of him, knew he was being followed by a white police officer who, after an unusually long period, had now turned on his police vehicle lights and siren. Crawford had no reason to believe that he had committed any traffic violation or offense. Given the unwonted course of events prior to Meyer signaling Crawford to pull over, Crawford was aware of the potential danger afoot. Thus, Crawford understandably proceeded—at a legal speed and in a safe manner—to the nearest safe location where he could pull over.

12. Mr. Crawford was unable to pull off of the interstate at the first exit he came to (Exit 187) based on the proximity of his vehicle to said exit at the time that Meyer activated his emergency signals. The next exit (Exit 188), a turnaround below the interstate, was very dark and isolated. Having done nothing wrong and now aware that he had been racially profiled, Crawford proceeded to exit the interstate at the nearest safe exit (Exit 189), which exit provided better lighting and assurance of his safety than the two preceding exits. After exiting, Crawford stopped his vehicle, in a non-threatening and compliant manner, in the Texas MedClinic parking lot because he was unable to stop at the only two previous entrances—a private gated apartment complex, and a hotel property that was inaccessible without committing a traffic violation.

13. In total, less than two minutes elapsed between Meyer activating his emergency signals in pursuit of Mr. Crawford and Crawford pulling over in the Texas MedClinic parking lot. During this time, Crawford maintained a legal speed and drove in a safe manner, showing no signs of an attempt to evade the impending traffic stop.

14. The ensuing events, as reflected on Officer Meyer's body cam video, are quite clear and egregious. Meyer exited his vehicle and immediately drew his gun, shouting dramatic instructions to a woman in the Texas MedClinic parking lot to "get out of the way." Meyer then approached Mr.

4

Crawford (while Crawford was sitting in his vehicle) with his finger on the pistol's trigger while training the gun at Crawford's head. Further escalating the situation, Meyer aggressively shouted multiple contradicting orders to Crawford, reinforcing Crawford's reasonable belief that Meyer posed a potentially life-threatening danger.

15. Once Mr. Crawford was on the ground outside the vehicle (and posing no threat to Meyer because he was face down and not moving or resisting), Meyer tased him, telling him to put his face on the pavement. While keeping his left knee—and full bodyweight—on Crawford's lower back, Meyer pushed Crawford's face into the pavement and tased him a second time. Meyer then handcuffed Crawford, continuing to hold Crawford's face down on the pavement with his hand to his upper back/neck until the backup officer arrived. Mr. Crawford asked him to remove his hand, but Meyer refused, continuing to hold Crawford down until another NBPD officer arrived and instructed Meyer that she would take over.

16. Mr. Crawford was simply on his way home from work when Meyer racially profiled him. Without reasonable suspicion, probable cause, and/or justification, Meyer stopped and detained Crawford, immediately drew and forcibly pointed his pistol directly at Crawford's head in a threatening manner, and then tased him twice. Yet Meyer did not stop there. Following the events set forth in paragraphs eight through fifteen, Meyer insisted that Crawford be arrested and taken to jail based on facts fabricated by Meyer (as verified by the body cam and dash cam video). New Braunfels police officers then booked Crawford into jail, where he remained until his wife was able to post bail.

17. Mr. Crawford herein pursues causes of action for violation of his Fourth Amendment rights including freedom from police use of excessive force, and unreasonable search and seizure. Based

on information and belief, Defendants' unlawful actions, which constituted multiple violations of Crawford's constitutional rights (including, but not limited to, Defendants' nearly one-hour-long unlawful stop ["seizure"], subsequent unlawful public detention of Crawford in handcuffs, on an extremely busy street, and the ensuing spurious criminal charges filed against him), resulted in Crawford's employer terminating his employment two weeks after the relevant events set forth in Paragraphs eight through sixteen.

18. Notwithstanding Comal County's dismissal of the spurious criminal charges filed against Mr. Crawford, the record of NBPD's unlawful arrest against Crawford remains accessible to the public and Mr. Crawford's potential employers.

19. Based on information and belief, Mr. Crawford remains unemployed as a direct result of Defendants' unlawful actions. As a further result of Defendants' unlawful actions, Crawford has been medically diagnosed with anxiety, and he suffers from extreme sleep loss. He has been prescribed medication for both conditions and suffers significantly in terms of his emotions because of these incidents. Additionally, Mr. Crawford suffers from intermittent pain and numbness behind his knee where the tasing by Meyer was targeted.

20. During a January 2015 New Braunfels City Council meeting, a New Braunfels City Council member ("the Council Member") and several New Braunfels citizens complained of racism and racial profiling perpetrated by NBPD officers. New Braunfels citizens notified Defendant (and then-NBPD Chief of Police) Wibert and New Braunfels City Manager Robert Camareno of their troubling encounters with NBPD officers.

21. As reportedly stated by the Council Member at a later municipal meeting, *"the purpose of the meeting was to be proactive and minimize or eliminate any kind of situation like was going on in*

*Ferguson, Missouri . . . we should address this at a local level before it explodes . . . we have all the same ingredients brewing here as in Ferguson."*

22. In September 2020, nine months after the relevant events, as detailed herein, NBPD gave Defendant Meyer the opportunity to resign. In the intervening nine months between Defendant Meyer's encounter with Mr. Crawford and NBPD allowing his resignation from the Department, NBPD failed to conduct an internal investigation into Defendant Meyer's conduct concerning said encounter with Crawford.

23. NBPD's reckless failure to formally address Defendant Meyer's conduct risks other jurisdictions hiring him without knowledge of his history of racial animus, racial profiling, and dangerous and reckless conduct on the job.

24. In sum, Defendants' course of conduct prior to, during, and following the relevant events, as detailed herein, resulted in Defendants depriving Mr. Crawford of his constitutional rights, and furthers the risk of Defendant Meyer similarly depriving other free citizens of their constitutional rights.

## IV. CAUSES OF ACTION

25. The allegations set forth in paragraphs nine through twenty-four are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading.

26. ***Section 1983—Generally.*** Federal law provides: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other

proper proceeding for redress." 42 U.S.C. § 1983.

27. The Fourth Amendment to the United States Constitution guarantees security from unreasonable search and seizure, including the expectation of privacy, and the right to be free from arrests absent probable cause to believe the arrested person committed a crime. Accordingly, Plaintiff alleges that Defendants subjected him to unreasonable search and seizure, violated his expectation of privacy, detained him without reasonable suspicion and/or probable cause, subjected him to physical abuse and unreasonable excessive force including but not limited to the threat of great bodily injury, and subjected Crawford to arrest absent probable cause.

28. As detailed herein, the actions and/or omissions of Defendants invaded Plaintiff's right to be free from violation of his integrity by actions of those charged with upholding the laws of the United States. At all times, Defendants were state actors performing acts against Plaintiff, as detailed herein, under color of state law, which actions by Defendants constituted violations of Plaintiff's clearly established Fourth Amendment rights.

29. Plaintiff therefore pleads that Defendants' actions, as detailed herein, allows Plaintiff to recover from a state actor for violation of his civil rights. Plaintiff hereby seeks recovery, against Defendants, pursuant to 42 U.S.C. § 1983.

30. In violating of Plaintiff's clearly established Fourth Amendment rights, as detailed herein, Defendant Meyer acted unreasonably in light of clearly established law. The unlawfulness of Defendant Meyer's behavior would be apparent to a reasonable officer. Plaintiff therefore pleads that Defendant Meyer was on notice of the unlawfulness of his actions, in light of clearly established law at the time of his acting, and that such actions, perpetrated by Defendant Meyer in violation of Plaintiff's clearly established Fourth Amendment rights, as detailed herein, evidence plain

incompetence and/or intentionality on the part of Defendant Meyer.

31. **_Section 1983—Excessive Force._** Plaintiff pleads that Defendant Meyer used excessive force and/or unnecessary force in the course of Defendant Meyer's stop, detention, arrest, and/or other "seizure" of a free citizen, such as Plaintiff, in violation of the Fourth Amendment of the United States Constitution and its "reasonableness" standard. Said actions resulted in Plaintiff sustaining injury—both physical and psychological—resulting directly and only from the use of force that was clearly excessive to the need, and the excessiveness of which was objectively unreasonable.

32. Defendant Meyer's actions and/or omissions are "objectively unreasonable" in light of the facts and circumstances confronting Defendant Meyer regardless of Defendant Meyer's subjective intent or motivation. Police are entitled only to measured and ascending responses to the actions of a suspect, calibrated to physical and verbal resistance shown by that suspect.

33. Careful attention to the facts and circumstances of this particular case demonstrate the objective unreasonableness of Defendant Meyer's action against Plaintiff, which is further evidenced by the physical and psychological injuries sustained by Plaintiff as a direct result of Defendant Meyer's actions.

34. First, Defendant Meyer did not act in response to an objective perception that Plaintiff had committed a crime of such severity that justified approaching Plaintiff with his gun drawn and trained at Plaintiffs head, and/or employing the use of a taser multiple times against Plaintiff, and/or sustaining pressure with his entire bodyweight on Plaintiff's lower back. Additionally, Plaintiff contends that no reasonable officer at the scene of the relevant events could have had reason to suspect Plaintiff of committing any specific crime—or any crime at all—and that Defendant Meyer's actions evidence plain incompetence and/or knowing violation of the law.

35. Second, Defendant Meyer's excessively forcible actions against Plaintiff prove objectively unreasonable because Plaintiff did not pose an immediate threat to the safety of Defendant Meyer or others. Additionally, Plaintiff contends that Defendant Meyer—and only Defendant Meyer—posed an immediate threat to those persons at the scene of the relevant events.

36. Finally, Defendant Meyer's excessively forcible actions against Plaintiff were objectively unreasonable given that Plaintiff did not actively resist arrest or attempt to flee. Defendant Meyer utterly and egregiously disregarded his duty to assess not only the need for force, but also the relationship between the need and the amount of force used when Defendant Meyer: (1) engaged in absolutely no negotiation with Plaintiff and/or announce himself as a police officer; (2) did not ask and/or attempt to search Plaintiff's car or person; (3) did not inform Plaintiff that he was being detained and/or arrested; and/or (4) made no effort and/or attempt to de-escalate the situation at any point in the course of the relevant events. Instead, Defendant Meyer immediately drew his gun and trained it at Plaintiff's head, issued overly dramatic and contradictory orders to Plaintiff, and employed the use of a weapon against an unresisting and largely compliant free citizen, namely Plaintiff, who was on his knees with his back turned.

37. As admitted by Comal County Criminal District Attorney Jennifer Tharpe, once Defendant Meyer reached Plaintiff's vehicle "it [was] clear that [Plaintiff] was the sole occupant [of the vehicle]. *[Plaintiff] complied with [Defendant] Meyer's orders* and placed his left hand . . . in plain view. [Plaintiff] was holding his cell phone in his right hand, which was also plainly visible. Thus, it should have been *plainly obvious that [Plaintiff] did not have a weapon in either hand*." *See* Motion to Dismiss Cause No. 2020CR0752 in the County Court at Law Comal County, Texas (emphasis added).

38. District Attorney Tharpe's admissions clearly and unequivocally establish that Plaintiff posed no threat to Defendant Meyer's safety and/or the safety of others, and/or did not otherwise initiate action which would indicate to a reasonably prudent officer that the use of force would be justified. Defendant Meyer's use of excessive force against Plaintiff in the course of the relevant events would undoubtedly be viewed as unreasonable by an objective, reasonable officer.

39. ***Section 1983—Unreasonable Search and Seizure.*** Traffic stops are considered seizures within the meaning of the Fourth Amendment of the United States Constitution, which Amendment protects individuals from unreasonable searches and seizures. When viewed in light of the totality of the circumstances of this particular case, the "seizure" conducted by Defendant Meyer against Plaintiff in the course of the relevant events was clearly unreasonable and deprived Plaintiff of the protection from such unreasonable seizures guaranteed to him by the Fourth Amendment.

40. Defendant Meyer's actions in seizing Plaintiff were unjustified at its inception; they suffered from a clear and objective want of a particularized and objective basis for suspecting legal wrongdoing. Defendant Meyer's ill-advised, ungrounded, and/or maliciously unlawful basis for initiating his unconstitutional seizure of Plaintiff—a "dirty license plate"—is unsustainable and taints his actions as unjustified at inception. No officer in Defendant Meyer's position during the course of the relevant events would have had an objectively reasonable suspicion that Plaintiff was engaged, or about to engage, in a violation of Tex. Transp. Code § 504.945; therefore, Plaintiff herein alleges that Defendant Meyer had no such objectively reasonable suspicion.

41. Even had Defendant Meyer possessed some unreasonable suspicion that Plaintiff was engaged, or about to engage, in a violation of Tex. Transp. Code § 504.945—and not acted out of clear and wanton disregard of Plaintiff's Fourth Amendment rights in racially profiling Plaintiff—

Defendant Meyer had ample opportunity to initiate a traffic stop of Plaintiff's vehicle prior to his actually doing so. Yet Defendant Meyer continued to follow Plaintiff for an unusually long period prior to initiating a traffic stop of Plaintiff's vehicle, his first of many acts of unreasonable escalation of the situation, in search of some valid basis for the stop and seizure before resorting to his objectively unreasonable and false suspicion that Plaintiff had somehow "violated" Tex. Transp. Code § 545.945, for which he never cited Plaintiff, nor mentioned the possibility of such a citation to his fellow New Braunfels PD officers or supervisors in the period following his stop, and/or detention, and/or assault, and/or arrest of Plaintiff.

42. Further evidencing the unreasonableness of Defendant Meyer's seizure of Plaintiff, and *assuming arguendo* that Defendant Meyer's actions were justified at its inception (though no such justification existed), Plaintiff alleges that Defendant Meyer's actions subsequent to the unjustified inception were entirely and unequivocally unrelated to the circumstances that "justified" the stop of Plaintiff.

43. Defendant Meyer's objectively unreasonable suspicion as to Plaintiff's "violation" of Tex. Transp. Code § 504.945, which Defendant Meyer claims (per his body-cam video recording) was the basis for initiating the seizure of plaintiff, if true, would constitute a mere regulatory offense, punishable only by fine. Any actions subsequent to Defendant Meyer's inception of such stop must have necessarily related in scope to the, at best, trivial circumstances that Defendant Meyer made the basis of his stop of Plaintiff.

44. Rather than act in relation to the scope of such aforementioned circumstances, Defendant Meyer demonstrated a plain incompetence and/or intentionality in violation of Plaintiff's rights. Per the unusually lengthy and self-serving Motion to Dismiss Plaintiff's criminal charges, raised by

Comal County Criminal District Attorney Jennifer Tharpe, "it appear[ed] that [Defendant] Meyer was conducting a *felony stop* as he approached [Plaintiff's] vehicle with his weapon (handgun) . . . drawn." *See* Motion to Dismiss Cause No. 2020CR0752 in the County Court at Law Comal County, Texas (emphasis added). Tharpe further stated that this conduct was "questionable as no felony had been committed[.]" Contrary to District Attorney Tharpe's contention, Plaintiff asserts that Defendant Meyer's actions far exceeded the realm of "questionable" conduct, and herein alleges that such conduct is better characterized as *unconstitutional* and demonstrated a plain incompetence and/or intentionality on the part of Defendant Meyer.

45. Defendants Meyer and Wibert are not entitled to immunity because all the actions set forth herein violate the clearly established statutory and constitutional rights of Mr. Crawford, of which it would be clear to a reasonable officer that their conduct was unlawful under the circumstances, in light of clearly established law.

46. ***Section 1983—Municipal Liability.*** Municipalities are liable under 42 U.S.C.S. § 1983 for constitutional torts visited in compliance with the municipality's policies, practices, customs, usages, and/or procedures. A municipality is liable under 42 U.S.C.S. § 1983 for constitutional deprivations visited pursuant to a municipal practice, custom, and/or usage even though such practice, custom, and/or usage has not received express and/or formal approval through the body's official decision-making channels.

47. Defendant New Braunfels, through its final policy-making authority in matters of law enforcement, adopted, sanctioned, ratified, implemented, and/or had actual or constructive knowledge of a policy, practice, custom, and/or usage of intentionally disregarding the rights of individuals such as Mr. Crawford regarding racial profiling, hostility, and harassment toward free

citizens in New Braunfels, Texas. The dire warnings of racism and ethnic profiling by NBPD officers, as passionately discussed in the New Braunfels City Council meeting in January 2015, constitutes constructive notice of such policy, practice, custom, and/or usage.

48. Meyer's supervisors, including but not limited to Defendant Wibert as Chief of the New Braunfels Police Department, ratified the decision to execute and maintain the false arrest of Plaintiff Crawford despite having clear and unequivocal evidence that there was no probable cause for the pursuit, detention, and arrest.

49. Defendant New Braunfels adopted a policy, practice, custom and/or usage through the inaction of its final policy-making authority in response to the dire warnings of racism and ethnic profiling by NBPD officers. NBPD, under then-Chief Wibert and through Defendant New Braunfels' final policy-making authority, adopted a policy, practice, custom, and/or usage of avoiding, ignoring, and/or covering up complaints against its officers regarding racial profiling and other discriminatory, unconstitutional acts.

50. Defendants New Braunfels and Wibert's inadequate supervision and/or inadequate training of NBPD officers constituted deliberate indifference to, and/or tacit authorization of, the violation of rights of free citizens with whom NBPD officers come into contact with, and affirmatively caused and/or was the moving force behind the Defendants' violation of Plaintiff's constitutional rights.

51. Accordingly, Plaintiff herein pleads that Defendants' actions and/or omissions violated Plaintiff's constitutional rights, which rights are guaranteed to Plaintiff by the Constitution and laws of the United States. At relevant times, Defendants were state actors performing these acts against Plaintiff under the color of state law. Defendants' actions and/or omissions constituted violations of 42 U.S.C. §1983, which allows Plaintiff to recover from a state actor for violation of his civil rights.

52. All causes of action listed above should be incorporated into the allegations concerning violation of Plaintiff's constitutional rights under 42 U.S.C.S. §1983.

## V. DAMAGES

53. As a result of Defendants' conduct, as detailed herein, Plaintiff Crawford has suffered, and will continue to suffer in the future from humiliation, embarrassment, and mental anguish. Further, as a proximate result of Defendant's actions as described in this petition, Crawford has sustained financial losses resulting from the arrest for which he now sues.

54. Plaintiff Crawford, a long-time New Braunfels resident, was simply driving home from work when his life was upended by the dangerous and unwarranted actions of Officer Meyer. Mr. Crawford lost his job shortly after the incident and continues to be unemployed. Although the criminal charges against him were dropped nine months after the arrest, the arrest still appears on a public records search and is accessible by prospective employers.

## VI. EXEMPLARY DAMAGES

55. Defendants' collective acts and/or omissions resulted from that entire want of care which establishes that Defendants' acts or omissions were the result of actual conscious indifference to the rights and welfare of Plaintiff Crawford, rather than momentary thoughtlessness, inadvertence, and/or error of judgment.

56. Alternatively, Defendants acted maliciously such that Defendants specifically intended to cause substantial injury to Plaintiff Crawford, and/or acted with a flagrant disregard for the rights of Crawford and with actual awareness that their acts or omissions involved an extreme degree of risk that the acts and omissions would result in the harm claimed by Crawford.

57. In conjunction with all of the foregoing, and otherwise intentionally and with deliberate or

conscious indifference to the safety and well-being of free citizens, such as Plaintiff, the City of New Braunfels adopted or maintained, through its final policymakers, unconstitutional policies and customs and failed to implement constitutional and proper policies and procedures. These actions proximately caused or resulted in the violation of the constitutional rights of Mr. Crawford, and proximately caused all resulting damages to him.

58.     Defendant Meyer acted willfully, deliberately, maliciously, or with reckless disregard for Mr. Crawford's constitutional rights when he used excessive force in the perpetration of an unlawful stop ("seizure"), detention, arrest, and/or imprisonment of Plaintiff Crawford on January 15, 2020. Accordingly, Crawford is entitled to a jury instruction regarding exemplary damages.

## VII. ATTORNEY FEES

59.     Plaintiff Crawford has necessarily retained the services of attorneys to represent him in this complex and difficult proceeding and cause of action. Plaintiff has retained the undersigned attorneys to represent him, and pursuant to 42 U.S.C. §1988(b), he is entitled to recover his reasonable and necessary fees incurred for these attorneys, and the reasonable and necessary expenses incurred in the pursuit of this claim at the trial level, the Court of Appeals level if the case is appealed to that Court (including any interlocutory appeal), and in the Supreme Court of the United States, if necessary.

## VIII. JURY DEMAND

60.     Plaintiff requests that this case be decided by a jury pursuant to Federal Rules of Civil Procedure 38 and 39.  Plaintiff has paid the appropriate jury fee.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Clarence Walter Crawford, Jr. respectfully prays that Defendants be cited to appear and answer herein and upon final trial, recover from and against Defendants jointly and severally for the following:

1. Actual damages in an amount within the minimum jurisdictional limits of the Court;
2. Prejudgment and post judgment interest at the maximum rates allowed by law;
3. Exemplary damages;
4. Attorney's fees;
5. All costs of suit; and
6. Such other and further relief to which the Court may deem just.

Respectfully submitted,

LAW OFFICES OF PAUL G. VICK
SPECTRUM CIRCLE
12703 SPECTRUM DRIVE, Suite 103
San Antonio, Texas 78249
(210)-735-1794
(210)-733-7510 FAX

150 E. Main Street, Suite 306
Fredericksburg, Texas 78624
(830) 998-8425
pvicklaw@aol.com
ATTORNEYS FOR PLAINTIFF

By:  /s/ Paul G. Vick
     Paul G. Vick
     SBN:  20563950