**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| CLARENCE WALTER CRAWFORD,<br>*Plaintiff* | §<br>§<br>§ | |
| | § | SA-21-CV-00007-XR |
| -vs- | §<br>§ | |
| KALEB MEYER, TOM WIBERT,<br>FORMER NEW BRAUNFELS, TEXAS<br>CHIEF OF POLICE; AND CITY OF<br>NEW BRAUNFELS, TEXAS,<br>*Defendants* | §<br>§<br>§<br>§<br>§ | |

## ORDER

On this day, the Court considered Defendant Tom Wibert's motion to dismiss. The Court reviewed Defendant Wibert's motion (ECF No. 8) and Plaintiff's response (ECF No. 10). After careful consideration, the Court issues the following Order.

## BACKGROUND

This case involves very troubling allegations. It arises out of the alleged assault and battery of Plaintiff Clarence Walter Crawford, a Black man, at the hands of Defendant Kaleb Meyer, a White former New Braunfels Police Department ("NBPD") officer. Plaintiff alleges that on January 15, 2020, Plaintiff was driving northbound on Interstate Highway 35 when Defendant Meyer stopped his vehicle beside Plaintiff at a stoplight. Plaintiff's vehicle did not have tinted windows, so Defendant Meyer was able to identify Mr. Crawford as a Black man. ECF No. 1 ¶ 9.

Plaintiff drove on when the light turned green. Defendant Meyer followed Plaintiff for a period of three or four minutes before activating his police cruiser's overhead lights and initiating a traffic stop. *Id*. ¶ 10. After triggering his lights and siren, Defendant Meyer informed dispatch that he was going to pull Plaintiff over for driving with a dirty license plate. *Id*. Notably, Defendant

Meyer was able to correctly read Plaintiff's license plate over the radio as G-E-R-0-S-A. Twice. *Id.*

Meanwhile, Plaintiff had no reason to believe he had committed any traffic violation and assumed he was being racially profiled. *Id.* ¶ 11. Still, he proceeded to the nearest safe location where he could pull over. Exit 187, the closest to Plaintiff at the time Defendant Meyer initiated his overhead lights and siren, was too close to safely take. The next exit, Exit 188, was a turnaround below the highway. So, Plaintiff took Exit 189 and stopped in a Texas MedClinic parking lot. *Id.* ¶ 12. Plaintiff estimates that less than two minutes elapsed between Defendant Meyer activating his emergency signals and Plaintiff's stop. *Id.* ¶ 13.

The next events were captured on Defendant Meyer's body cam. Defendant Meyer exited his vehicle with his service weapon drawn.[1] *Id.* ¶ 14. He approached Plaintiff, who was sitting in the vehicle, with his pistol aimed at Plaintiff's head and his finger on the trigger. *Id.* Defendant Meyer ordered Plaintiff out of the vehicle and onto the ground. Once Plaintiff was on the pavement, and even though Plaintiff posed no threat, Defendant Meyer tasered him. *Id.* ¶ 15. Defendant Meyer then placed his knee on Plaintiff's back, pushed Plaintiff's head into the pavement, and tasered him again. *Id.* Defendant Meyer handcuffed Plaintiff and kept him on the pavement until a backup officer arrived. *Id.*

The officers never found drugs or weapons in Plaintiff's car or on his person. Plaintiff was not accused of speeding, driving recklessly, or otherwise putting other civilians in harm's way. There were no warrants out for Plaintiff's arrest. There were no accusations that Plaintiff had

---

[1] A motion from the New Braunfels District Attorney's Office, filed as an exhibit to Defendant Wibert's motion to dismiss, indicates that it appears from Defendant Meyer's bodycam footage that he was conducting a "felony stop." It notes that Defendant Meyer's actions were "not in line with the New Braunfels Police Department's [Standard Operating Procedure] for how a felony stop is to be conducted. . . . [and] no felony had been committed at that point." ECF No. 8-1 at 2.

behaved violently toward another person. There was no allegation that Plaintiff had acted in a threatening manner toward Defendant Meyer. In fact, Defendant Meyer's bodycam footage reveals that Plaintiff was the sole occupant of his vehicle and complied with Defendant Meyer's orders. ECF No. 8-1 at 2. When Defendant Meyer approached Plaintiff's car, it was clear that Plaintiff had one hand on his steering wheel and a cell phone in the other. Even the New Braunfels District Attorney's Office admits that "it should have been fairly obvious that [Plaintiff] did not have a weapon in either hand." *Id*. Plaintiff's hands and knees were on the ground when Defendant tasered him the first time. *Id*. After tasering him a *second* time, again with no allegation that Plaintiff had threatened the officers or failed to comply with orders,[2] the officers placed Plaintiff under arrest.

All this over a dirty license plate.

Plaintiff was charged with Interference with Public Duties and Fleeing from a Police Officer. The charges were ultimately dropped in the interest of justice. ECF No. 8-1. But these incidents have far-reaching ramifications. Two weeks after the events of January 15, 2020, Plaintiff's employer terminated his employment. ECF No. 1 ¶¶ 17, 19. Even though the charges were dropped, Plaintiff's arrest remains accessible to the public and potential employers. *Id*. ¶ 18. Plaintiff further alleges that he suffers anxiety, extreme sleep loss, and intermittent pain and numbness where he was tasered. *Id*. ¶ 19.

On January 7, 2021, Plaintiff filed his Complaint asserting causes of action against the City of New Braunfels, Kaleb Meyer, and Former New Braunfels Police Chief Tom Wibert under 42 U.S.C. § 1983. He asserts that all Defendants deprived him of his Fourth Amendment right to be free from unreasonable search and seizure, that Defendant Meyer used excessive force in

---

[2] The New Braunfels District Attorney's Office admits that "Officer Meyer's behavior in the instant case was less than professional. He failed to act to deescalate the situation and used force that did not appear to be necessary when he deployed his taser." ECF No. 8-1 at 3.

3

effectuating his arrest, and that the City of New Braunfels and Defendant Wibert inadequately supervised and/or trained the NBPD officers. *See generally*, ECF No. 1. On March 8, 2021, Defendant Wibert filed the instant motion to dismiss.

## DISCUSSION

### I. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Georgia, Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155,* 681 F.3d 614, 617 (5th Cir. 2012)); *see also Torch Liquidating Trust ex rel. Bridge Assocs. LLC v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain recovery") (internal quotation marks and citations omitted).

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 US at 678 (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the court should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions.").

**II.     Analysis**

A municipal supervisor cannot be held liable under Section 1983 merely because it employs a tortfeasor. *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 691 (1978). "Rather, a plaintiff must show either the supervisor personally was involved in the constitutional violation or that there is a 'sufficient causal connection' between the supervisor's conduct and the constitutional violation." *Evett v. DETNTFF*, 330 F.3d 681, 689 (5th Cir. 2003). "A supervisory official is held to a standard of 'deliberate indifference,' which requires proof that the supervisor 'disregarded a known or obvious consequence of his action.'" *Id*. (internal citation omitted).

Here, Plaintiff brings a claim against Defendant Wibert under Section 1983 for failure to supervise. To succeed on a failure to supervise claim, Plaintiff must prove that "(1) the supervisor failed to supervise or train the subordinate officer; (2) a causal link exists between the failure to

5

train or supervise and the violation of the plaintiff's rights, and (3) the failure to train or supervise amounts to deliberate indifference." *Dotson v. Edmonson*, No. CV 16-15371, 2018 WL 501512, at *11 (E.D. La. Jan. 22, 2018) (citing *Davidson v. City of Stafford, Texas*, 848 F.3d 384, 397 (5th Cir. 2017)).

Defendant Wibert argues that Plaintiff failed to plead facts supporting a finding of deliberate indifference. ECF No. 8 at 4. He asserts that Plaintiff has not shown that he implemented an unconstitutional policy or otherwise failed to train the officers of the NBPD. *Id*. at 4–5. Plaintiff responds that he is not required to present more than "minimal factual allegations" because plaintiffs generally do not have access to all necessary information at the motion to dismiss stage. ECF No. 10 ¶ 9 (citing *Harkless v. Brazoria County*, No. 3:14 CV-329, 2016 WL 1702595 at *5 (S.D. Tex. April 28, 2016)).

As evidence of deliberate indifference, Plaintiff points to warnings made to the City of New Braunfels during a City Council meeting in January 2015. He asserts that "racism and ethnic profiling by NBPD officers were a topic of passionate discussion" and that the City of New Braunfels, and by extension, Defendant Wibert, had constructive notice[3] that no policy was in place to prevent racial profiling. *Id*. ¶ 12. He continues that New Braunfels citizens notified Defendant Wibert of "their troubling encounters with NBPD officers," and that such allegations put Defendant Wibert on notice of ongoing racism within the NBPD. *Id*. ¶ 15.

The Court finds that Plaintiff has not pled a sufficient causal link between the January 2015 City Council meeting and the alleged deprivation of Plaintiff's constitutional rights. Deliberate

---

[3] Plaintiff cites *Okon v. Harris County Hospital District*, 426 F. App'x 312, 316 (5th Cir. 2011) for the proposition that "'[a]ctual knowledge may be shown by such means as discussions at council meetings or receipt of written information,'" while "constructive knowledge 'may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity.'" ECF No. 10 ¶ 14.

6

indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Board of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997). "Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (internal citation omitted). But "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id*.

Plaintiff has not properly alleged that Defendant Wibert retained a program that caused city employees to violate New Braunfels citizens' constitutional rights. Even taking Plaintiff's factual allegations as true, as the Court must, there is nothing connecting the January 2015 City Council meeting to a policy of action or inaction on the part of Defendant Wibert. "In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390–91 (1989). A plaintiff must proffer facts illustrating a link between a deficient policy and the constitutional violation. *Id*. at 385.

Here, Plaintiff alleges that no policy was enacted to prevent the racial profiling discussed at that City Council meeting, but Plaintiff has not adequately pled facts illustrating that Defendant Wibert retained a deficient training program. It is a sad fact that racism and racial profiling exist within local government and police departments. But when attempting to hold a police captain

individually liable for his subordinate's tortious conduct, it is not enough to plead that citizens complained of racial profiling in the past and that it occurred in this case. There must be some allegation that the municipal actor's "policy of inaction . . . is the functional equivalent of a decision by the [actor] itself to violate the Constitution." *Id*. at 395 (O'Connor, J., concurring). "A less stringent standard of fault for a failure-to-train claim would result in *de facto respondeat superior* liability on municipalities." *Connick*, 563 U.S. at 62.

"Proof of deliberate indifference is difficult, although not impossible, to base on a single incident. The 'single incident exception' is extremely narrow; a plaintiff must prove that the *highly predictable consequence* of a failure to train would result in the specific injury suffered, and that the failure to train represented the moving force behind the constitutional violation." *Valle v. City of Houston*, 613 F.3d 536, 549 (5th Cir. 2010) (internal citation omitted; emphasis in original). Plaintiff has not specifically identified a deficiency in any current NBPD policies or a particular kind of training that he believes NBPD officers should have undergone. Without more, the Court cannot conclude that Defendant Meyer's conduct was the "highly predictable consequence" of Defendant Wibert's inaction. In sum, Plaintiff has not adequately pled facts showing that Defendant Wibert was deliberately indifferent to the risk of racial profiling and police misconduct to overcome a motion to dismiss.

## CONCLUSION

For the foregoing reasons, Defendant Wibert's motion to dismiss (ECF No. 8) is **GRANTED**. Plaintiff's Section 1983 claims against Defendant Wibert are **DISMISSED WITH PREJUDICE**.

It is so **ORDERED**.

**SIGNED** this 2nd day of April, 2021.

Xavier Rodriguez
United States District Judge